THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:12cv18

J. TEDD SMITH,           )
                         )
        Plaintiff,       )
                         )
                         )    **<u>MEMORANDUM OF</u>**
        vs.              )    **<u>DECISION AND ORDER</u>**
                         )
                         )
E&E CO., LTD.,           )
                         )
        Defendant.       )
_____)

**THIS MATTER** is before the Court on the Plaintiff's Motion to Dismiss Counterclaims [Doc. 9]; the Magistrate Judge's Memorandum and Recommendation [Doc. 17] regarding the disposition of said motion; and the Plaintiff's Objections to the Memorandum and Recommendation [Doc. 18].

## I.     PROCEDURAL BACKGROUND

On December 20, 2011, the Plaintiff J. Tedd Smith filed his Complaint in the Buncombe County General Court of Justice, Superior Court Division, asserting a claim for breach of his employment contract against the Defendant E&E Co., Ltd. [Complaint, Doc. 1-1]. On January 26, 2012, the Defendant

removed the action to this Court on the basis of diversity jurisdiction. [Notice of Removal, Doc. 1].

On February 2, 2012, the Defendant filed its Answer and Counterclaims for constructive fraud and deceptive trade practices. [Answer and Counterclaims, Doc. 4]. On February 27, 2012, the Plaintiff filed his Motion to Dismiss the Defendant's Counterclaims, contending that the Defendant had failed to allege its claims with sufficient particularity. [Motion to Dismiss Counterclaims, Doc. 9].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, the Honorable David S. Cayer, United States Magistrate Judge, was designated to consider the Plaintiff's Motion to Dismiss Counterclaims and to submit a recommendation for its disposition. On May 30, 2012, the Magistrate Judge entered a Memorandum and Recommendation in which he recommended that the Motion to Dismiss Counterclaims be denied. [Doc. 17]. The Plaintiff filed a timely Objection to the Memorandum and Recommendation on June 17, 2012. [Doc. 18]. The Defendant filed a Reply in opposition on July 5, 2012. [Doc. 19].

Having been fully briefed, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

### A. Standard of Review Applicable to Objections to Magistrate Judge's Memorandum and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

### B. Rule 12(b)(6) Standard of Review

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
>
> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" as required by Rule 8. ... [E]ven though Rule 8 "marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, ... it does not

> unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 555, 557, 127 S.Ct. 1955 and Iqbal, 556 U.S. at 678-79, 129 S.Ct. 1937).

## III. FACTUAL BACKGROUND

Taking the allegations set forth in the Defendant's Counterclaims as true, the following is a summary of the relevant facts.

### A. June 2, 2008 Formation of 1967 Bedding, LLC

The Plaintiff was the President of International Home Fashions, Inc. ("IHF") in June 2008. [Answer and Counterclaims, Doc. 4 at ¶ 31]. At that time, Edmund Jin ("Jin") was CEO of the Defendant E&E. [Id. at ¶ 2]. On June 2, 2008, the Plaintiff and Jin formed 1967 Bedding, LLC ("1967 Bedding"). [Id. at ¶ 33]. The original Articles of Organization of 1967 Bedding identify the Plaintiff as the sole Member/Organizer. [Articles of Organization, Doc. 4-2 at 2]. A subsequent Amendment to the Articles of Organization added Jin as Member/Organizer on June 6, 2008. [Amendment of Articles of Organization, Doc. 4-2 at 4].

### B. June 3, 2008 Assets Agreement

On June 3, 2008, 1967 Bedding entered into an "Agreement to Sell Assets" ("Assets Agreement") with the Plaintiff's company, IHF. [Answer and Counterclaims, Doc. 4 at ¶35]. The Assets Agreement indicates that IHF had insufficient funds to complete the 2008 bedding and blanket season and that it intended to file a voluntary Chapter 11 bankruptcy proceeding within a matter of days. [Assets Agreement, Doc. 4-1 at ¶¶ 1, 7]. Pursuant to the Agreement, 1967 Bedding agreed to purchase IHF's inventory of bedding and blankets and sell this inventory during the 2008 bedding and blanket season. [Id. at ¶ 2]. The Assets Agreement acknowledges that "1967 Bedding is an associated business with E&E Co. Ltd. a/k/a JLA." [Id.]

At the time of the Assets Agreement, however, Plaintiff failed to disclose a significant financial liability, namely, an agreement between IHF and its customers (the largest being QVC) that IHF would buy back any inventory those customers could not sell. [Answer and Counterclaims, Doc. 4 at ¶¶ 37-39]. In addition, the Plaintiff represented that IHF products were of good quality, and he failed to disclose known product issues. [Id. at ¶ 40].

### C. June 4, 2008 Employment Agreement

On June 4, 2008, the Defendant and the Plaintiff entered an Employment Agreement, in which the Defendant agreed to hire the Plaintiff as Vice President of Sales. [Id. at ¶¶ 42-43]. One of the Plaintiff's duties under the Employment Agreement was to sell Defendant's JLA division products, which included former IHF products. [Employment Agreement, Doc. 1-1 at 8 ¶ 2.1; Answer and Counterclaims, Doc. 4 at ¶ 44]. The Plaintiff and the Defendant agreed that the Plaintiff would make a targeted amount of sales. [Employment Agreement, Doc. 1-1 at 9 ¶ 4.a(2); Answer and Counterclaims, Doc. 4 at ¶ 45]. The parties further agreed that the Plaintiff would receive additional compensation based on commissions from the sale of former IHF product after IHF creditors were paid. [Employment Agreement, Doc. 1-1 at 9 ¶ 3.2(c); Answer and Counterclaims, Doc. 4 at ¶ 46].

Following the execution of these Agreements, the Defendant was forced to buy back former IHF product from IHF's former customers, including QVC. [Answer and Counterclaims, Doc. 4 at ¶¶ 49-50]. The Defendant has been unable to sell all of the returned IHF inventory. [Id. at ¶ 51]. The Defendant also experienced lower than expected sales and more than expected

customer issues arising from significant defects in the former IHF products. [Id. at ¶ 52].

On or around February 27, 2009, the Defendant terminated the Plaintiff's employment. [Complaint, Doc. 1-1 at ¶ 12]. Thereafter, the Plaintiff brought this action, asserting claims arising from the breach of the Employment Agreement. [Id. at ¶¶ 18-20]. The Defendant, in turn, asserted counterclaims for constructive fraud and deceptive trade practices based upon an allegation that the Plaintiff owed the Defendant a fiduciary duty "[a]s [a] Member/Organizer of 1967 Bedding." [Answer and Counterclaims, Doc. 4 at ¶ 53]. The Defendant asserts in its counterclaims that the Plaintiff breached this duty when he misrepresented the quality and value of the IHF inventory as well as his ability to make sales, and that the "Defendant relied on these misrepresentations in entering the Employment Agreement and Assets Agreement to its detriment." [Id. at ¶¶ 54, 55].

## IV. DISCUSSION

The Defendant premises its constructive fraud and deceptive trade practice claims upon the Plaintiff's breach of an alleged fiduciary duty to disclose certain information to the Defendant. For the reasons discussed herein, however, the Court concludes that the Defendant has failed to allege

sufficient facts to demonstrate any plausible claims for relief based upon these alleged nondisclosures.

To maintain a claim for constructive fraud, a party must allege:

> circumstances (1) which created the relation of trust and confidence [the "fiduciary" relationship], and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff. Put simply, a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty.

Keener Lumber Co. v. Perry, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (citation and internal quotation marks omitted), disc. rev. denied, 356 N.C. 164, 568 S.E.2d 196 (2002).

Generally, to establish a counterclaim for unfair or deceptive trade practices, the Defendant must show that the Plaintiff (1) engaged in an unfair or deceptive practice or act, (2) "in or affecting commerce," and (3) that such act proximately caused the Defendant actual injury. Mitchell v. Linville, 148 N.C. App. 71, 73-74, 557 S.E.2d 620, 623 (2001). Here, the Defendant bases its deceptive trade practices claim on the same breach of fiduciary duty which forms the basis of its constructive fraud claim. [See Answer and Counterclaims, Doc. 4 at ¶ 62]. Thus, in order to prevail on its deceptive trade practices claim, the Defendant must establish some plausible basis for the

existence of a fiduciary duty on the part of the Plaintiff. See generally Governors Club, Inc. v. Governors Club Ltd. P'ship, 152 N.C. App. 240, 250, 567 S.E.2d 781, 788 (2002) (noting allegations sufficient to state claim for constructive fraud are likewise sufficient to state claim for unfair and deceptive trade practices) aff'd, 357 N.C. 46, 577 S.E.2d 620 (2003).

Generally speaking, North Carolina court have recognized two types of fiduciary relationships:

> (1) those that arise from legal relations such as attorney and client, broker and client … partners, principal and agent, trustee and cestui que trust, and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other.

S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008). In the present case, the Defendant does not allege any fiduciary relationship "existing as a fact," nor does the Defendant allege that it had any of the legal relations with the Plaintiff that North Carolina Courts have generally recognized as giving rise to fiduciary relationships. At most, the Defendant has alleged an employment relationship with the Plaintiff. [See Answer and Counterclaims, Doc. 4 at ¶¶ 42-43]. An employer-employee relationship, however, does not generally give rise to a fiduciary relationship

under North Carolina law.  See Dalton v. Camp, 353 N.C. 647, 651, 548 S.E.2d 704, 708 (2001).

The Defendant asserts in its Counterclaims that the Plaintiff's fiduciary duty to the Defendant arose by virtue of his status as a Member/Organizer of 1967 Bedding.  While North Carolina does recognize that managers of a LLC have a fiduciary duty, such duty flows only to the LLC itself.  See Kaplan v. O.K. Technologies, L.L.C., 196 N.C. App. 469, 473-74, 675 S.E.2d 133, 137 (2009).  The Defendant is not the LLC at issue, and thus, any fiduciary duty that the Plaintiff had to 1967 Bedding does not apply to the Defendant.

In arguing that the Plaintiff owed it a fiduciary duty as a Member of 1967 Bedding, the Defendant repeatedly asserts that it formed 1967 Bedding, LLC with the Plaintiff.  [See Doc. 12 at 8, 10, 12].  These assertions, however, are contradicted by the 1967 Bedding's Articles of Organization, as amended, which identify only the Plaintiff and Edmund Jin as Member-Managers, not the Defendant.  [Articles of Organization, Doc. 4-2 at 4]. While the Assets Agreement does make reference to the fact that 1967 Bedding is "an associated business with E&E," a mere association between 1967 Bedding and Defendant, standing alone, is not sufficient to establish that Plaintiff's fiduciary duty to 1967 Bedding extended to Defendant.  No North Carolina

case law supports the Defendant's assertion that the Plaintiff, as a Member/Organizer of 1967 Bedding, LLC, owed a fiduciary duty to the Defendant, an entity that did not even hold an ownership interest in 1967 Bedding, LLC but was merely "associated" by reason of Jin's role as CEO of the Defendant. Indeed, under North Carolina law, Smith did not even owe a fiduciary duty to Jin, the only other LLC member, by reason of his interest in the LLC. See Kaplan, 196 N.C. App. at 473-74, 675 S.E.2d at 137.

Although not specifically alleged in its Counterclaims, the Defendant claims in its Response to the Motion to Dismiss that a joint venture existed between the Plaintiff and the Defendant, and that the Plaintiff's fiduciary duty arose from this joint venture. [Response to Motion to Dismiss, Doc. 12 at 6-7]. A joint venture is defined as "an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term." Lake Colony Const., Inc. v. Boyd, 711 S.E.2d 742, 746 (N.C. Ct. App. 2011) (citation omitted). Under North Carolina law:

> [T]he essential elements of a joint venture are (1) an agreement to engage in a single business venture

> with the joint sharing of profits, (2) with each party to the joint venture having a right in some measure to direct the conduct of the other through a necessary fiduciary relationship. The second element requires that the parties to the agreement stand in the relation of principal, as well as agent, as to one another.

Id. at 746-47 (internal citations and quotation marks omitted). A principal is "one who authorizes another to act on his or her behalf as an agent." Black's Law Dictionary 1312 (9th ed. 2009). "An agent is one who, with another's authority, undertakes the transaction of some business or the management of some affairs on behalf of such other, and to render an account of it." Phelps-Dickson Builders, L.L.C., v. Amerimann Partners, 172 N.C. App 427, 435, 617 S.E.2d 664, 669 (2005).

The Defendant references the Assets Agreement to establish that the Plaintiff and the Defendant entered into an implicit joint venture, whereby the parties would engage in a single business venture with joint sharing of profits. [Response to Motion to Dismiss, Doc. 12 at pp. 8,10]. The Assets Agreement, however, was between IHF and 1967 Bedding, not between the Plaintiff and the Defendant. Therefore, this document does not establish a joint venture between the parties to this lawsuit. Additionally, the Defendant argues that the parties stand in the relation of principal and agent to one another, thus evidencing a joint venture relationship. [Response to Motion to

Dismiss, Doc. 12 at 10]. While the Employment Agreement establishes that the Plaintiff was an agent to the Defendant, and the Defendant a principal to the Plaintiff, the Counterclaims fail to allege facts that demonstrate how the Defendant acted as an agent to the Plaintiff. Moreover, there is nothing in the Defendant's Counterclaims to indicate that the Defendant required the Plaintiff's authority to undertake transactions involving the sale of IHF blankets, or that the Defendant was managing the sale of IHF blankets on behalf of the Plaintiff. Indeed, the pleadings fail to allege facts to establish that the Plaintiff had the power to direct the conduct of Defendant in any manner. Without any plausible allegations to establish that each party stood as principal, as well as agent, to one another, the Counterclaims fail to allege the existence of any joint venture between the Plaintiff and the Defendant.

In sum, the Court concludes that the Defendant failed to allege any well-pled facts supporting its conclusory assertion that the Plaintiff owed any fiduciary duty to the Defendant. Accordingly, the Defendant cannot maintain claims for constructive fraud and unfair trade acts based upon the existence of a fiduciary relationship between the Plaintiff and the Defendant.

Within its Response, both to the Motion to Dismiss and to the Plaintiff's Objections to the Memorandum and Recommendation, the Defendant

alternatively requests that the Court grant it leave to replead its Counterclaims to cure any deficiencies therein. [Response to Motion to Dismiss, Doc. 12 at 21; Reply to Objections, Doc. Doc. 19 at 15]. The Defendant had the opportunity to amend its Counterclaims as of right once the Motion to Dismiss was filed. See Fed. R. Civ. P. 15(a)(1)(B). The Defendant, however, failed to take advantage of this opportunity and instead sought leave to amend as "alternative relief" to the Plaintiff's Motion to Dismiss. The Defendant's request for leave to amend is procedurally improper, as the Defendant included its request in a responsive brief and failed to file a separate motion as required by the Local Rules. See LCvR 7.1(C)(2). On this basis alone, the Defendant's request for leave to amend should be denied. Even if the Court considered the Defendant's request, however, the Defendant has failed to present the Court with a proposed amended pleading. The Defendant therefore has denied the Court the opportunity to consider the effect or efficacy of any hypothetical amendment to its pleading. For these reasons, the Defendant's alternative request to amend its Counterclaims is denied.

For the reasons set forth above, the Court concludes that the Plaintiff's Motion to Dismiss Plaintiff's Counterclaims should be granted.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 18] are **SUSTAINED**, and the Memorandum and Recommendation of the Magistrate Judge [Doc. 17] is **REJECTED.**

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss Counterclaims [Doc. 9] is **GRANTED**, and the Defendant's Counterclaims for constructive fraud and deceptive trade practices are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed: August 1, 2012

Martin Reidinger
United States District Judge