# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:12-cv-00018-MR-DLH

| | |
|---|---|
| J. TEDD SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF DECISION** |
| ) | **AND ORDER** |
| ) | |
| E&E CO., LTD., ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial [Doc. 52].

**I.   PROCEDURAL BACKGROUND**

The Plaintiff J. Tedd Smith ("Smith") originally brought this action in the Buncombe County General Court of Justice, Superior Court Division, asserting a claim for breach of his employment contract against his former employer, the Defendant E&E Co., Ltd. ("E&E") [Complaint, Doc. 1-1]. On January 26, 2012, the Defendant removed the action to this Court on the basis of diversity jurisdiction. [Notice of Removal, Doc. 1].

The Defendant subsequently filed its Answer and Counterclaims for constructive fraud and deceptive trade practices. [Answer and

Counterclaims, Doc. 4]. Those Counterclaims, however, were ultimately dismissed. [See Doc. 20].

This case proceeded to a jury trial on May 13, 2013. On May 15, 2013, the jury returned a verdict in favor of the Plaintiff. [Doc. 46]. Judgment was entered on June 12, 2013. [Doc. 48]. Thereafter, the Defendant filed the present motion for judgment as a matter of law or, in the alternative, for a new trial. [Doc. 52]. The Plaintiff has filed a response opposing the Defendant's motion [Doc. 54], and the Defendant has filed a reply [Doc. 55].

Having been fully briefed, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Rule 50 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).  If the court does not grant a Rule 50(a) motion at trial, the movant may file a renewed motion for judgment as a matter of law within 28 days after the entry of judgment.  Fed. R. Civ. P. 50(b).  Such motion may include an alternative request for a new trial under Rule 59.  Id.

A jury verdict will withstand a Rule 50(b) motion unless the nonmovant has presented no substantial evidence to support the jury verdict.  Stamathis v. Flying J, Inc., 389 F.3d 429, 436 (4th Cir. 2004).  A Rule 50 motion for judgment as a matter of law is reviewed under the same standard as that applied in reviewing a motion for summary judgment.  Thus, in considering the Defendant's motion, the Court must view the evidence in the light most favorable to the Plaintiff and draw all reasonable inferences in the Plaintiff's favor.  See Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002).  A verdict may not be set aside unless the Court "determines that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc., 87 F.3d 654, 656-57 (4th Cir. 1996) (quoting Winant v. Bostic, 5 F.3d 767, 774 (4th Cir. 1993)).

## III. FACTUAL BACKGROUND

Viewing the evidence presented at trial in the light most favorable to the Plaintiff, the following is a summary of the relevant facts.

As of June 3, 2008, Smith was a principal and officer of International Home Furnishings ("IHF"), an electric blanket business preparing to file bankruptcy. On that date IHF entered into an agreement whereby it transferred its inventory, which would then be sold by E&E, which would pay IHF based on a percentage of sale made.[1]

In conjunction with the Asset Sales Agreement, on June 4, 2008, E&E and Smith entered an Executive Employment Agreement under which E&E employed Smith as Vice President of Sales of E&E. Pursuant to this Agreement, E&E engaged Smith to sell E&E product, including "former IHF product." [Answer & Counterclaims, Doc. 4 at ¶ 44].

Paragraph 4 of the Executive Employment Agreement, titled "Termination of Employment," provided, in pertinent part, for severance payments on the following terms and conditions:

> In the event this Agreement is terminated by [E&E] for any reason other than for cause shown, [Smith] will receive the severance payment of $100,000.

---

[1] This was done through a third party, 1967 Bedding. The details of this convoluted arrangement are not pertinent to an understanding of the issues presented in this motion.

> However, if this agreement is terminated within the first year the severance shall be $150,000. Such payment will be payable in full within ninety (90) days after such Termination notice is received in writing by [Smith] from [E&E]….

[Executive Employment Agreement, Doc. 1-1 at 9 ¶ 4]. Subparagraph 4(a) of the Agreement further provided as follows:

> Notwithstanding anything to the contrary stated above, [E&E] may, at its option, terminate this Agreement for cause shown, such termination to be effective upon the giving of written notice thereof to [Smith]. As used in this paragraph 4, the phrase 'for cause shown' shall included [sic] but not limited to the following:
> …
> (2) Failure by [Smith] to generated [sic] a minimum of $ two million sales [sic] per contract year. …"

[Id. at 9 ¶ 4(a)].

On or around February 27, 2009, less than nine months into Smith's employment, E&E transmitted to Smith a written notice of termination which stated, in pertinent part, as follows:

> As per your employment agreement, this letter serves as notice of termination which will be effective as of today 2/27/2009. This termination is due to the following:
>
> Failure to generate a minimum of $2 million dollars in sales per year.
> …

> Due to the above reasons, this letter serves as termination to the employee effective today February 27, 2009.

[Termination Letter, Doc. 1-1 at 13]. In terminating Smith, E&E refused to pay the $150,000 severance payment contemplated by paragraph 4 of the Agreement. This action followed.

## IV. DISCUSSION

In its Rule 50(b) motion, E&E argues that the only reasonable conclusion that a jury could reach from the unambiguous language of the parties' contract and the facts presented at trial is that Smith was terminated "for cause shown" and therefore, E&E did not breach its employment contract with Smith when it failed to pay him a $150,000 severance payment. In particular, E&E contends that "cause shown" was established by (1) evidence of Smith's failure to reach the $2 million sales benchmark for the sale of the JLA Bedroom Ensemble product line in the first year of his contract; and (2) Smith's habitual neglect of duties during the first nine months of his employment, as reflected in his low sales numbers, lack of sales presentations, and lack of an action plan to address low sales.

Alternatively, E&E argues that a new trial is warranted due to the improper admission of the testimony of William Clarke concerning the

bankruptcy proceedings of IHF, which E&E contends was irrelevant to the issue before the Court and was highly prejudicial to E&E. E&E argues that a jury could reasonably have rendered a verdict against it based on this inadmissible and prejudicial evidence. The Court will address each of these arguments in turn.

### A. Whether Termination was for "Cause Shown"

Under California law,[2] the primary goal of contract interpretation is to give effect to the intent of the parties at the time they contracted. Cal. Civ. Code § 1636. The Court ascertains the intent of the parties from the writing alone, if possible, and the contract language governs its interpretation, if clear and explicit. Cal. Civ. Code §§ 1638-1639. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. Further, the "contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Cal. Civ. Code § 1647.

In the present case, the Executive Employment Agreement required E&E to pay Smith a severance payment of $150,000 if it terminated the

---

[2] The Executive Employment Agreement provides that it "shall be construed and enforced in accordance with, the laws of the [S]tate of California." [Executive Employment Agreement, Doc. 1-1 at 11 ¶ 14].

7

Agreement in less than a year "for any reason other than for cause shown." [Executive Employment Agreement, Doc. 1-1 at 9 ¶ 4]. At trial, two E&E officers, Edmond Jin ("Jin") and George Kerr ("Kerr") testified that E&E terminated Smith for the reason stated in the written notice of termination. [Transcript May 14, 2013, Doc. 51 at 168, 170-73, 252-53, 255]. The notice stated that E&E terminated Smith for "[f]ailure to generate a minimum of $2 million dollars in sales per year" and stated no other reason for the termination. [Termination Letter, Doc. 1-1 at 13].

At trial and now in its motion, E&E contends that Smith failed to generate $2 million in sales in his first year of employment and that E&E accordingly terminated Smith "for cause shown" under subparagraph 4(a)(2) of the Executive Employment Agreement, for failure to generate a minimum of $2 million in sales in a contract year. A reasonable jury could find, however, that by the express and plain language of subparagraph 4(a)(2), Smith could not have failed to generate $2 million in sales in a "contract year" because at the time of his termination, he had been employed less than a year. Therefore, there is substantial evidence to support the jury's determination that E&E did not have "cause" to terminate Smith.

Further, Smith presented substantial evidence from which a reasonable jury could find that Smith had in fact generated more than $2 million in sales in the first year following the execution of the Agreement in the form of sales of JLA Home Fabric product, sales of IHF inventory, and sales of E&E product on IHF contracts and accounts. By E&E's admission, Smith generated more than $500,000 in sales of JLA Home Fabric product during the course of his employment. [Transcript May 13, 2013, Doc. 49 at 53-54; Transcript May 14, 2013, Doc. 51 at 189-91]. He further generated more than $1.2 million in E&E sales of IHF inventory. [Transcript May 13, 2013, Doc. 49 at 52, 54-55; Transcript May 14, 2013, Doc. 51 at 39-40, 43-45]. Finally, there was evidence presented that Smith generated approximately $7 million in sales of E&E electric blankets and other E&E product on the IHF contracts and IHF accounts. [Transcript May 13, 2013, Doc. 49 at 55-57; Transcript May 14, 2013, Doc. 51 at 21-25, 31-32, 35-39].

E&E argues that the "sales" benchmark referenced in subparagraph 4(a)(2) was limited to sales of Smith's "core product categories," namely the products of JLA Home Fabric, Inc., sometimes called the JLA home fabric division of E&E ("JLA Home Fabric"). The parties' contract, however, does not support this contention. By its express terms, the

Agreement provided that Smith was responsible to develop business in connection with the "Company's" product. [Executive Employment Agreement, Doc. 1-1 at 8 ¶ 2.1]. Under the Agreement, "Company" meant E&E and was not limited to any particular division of E&E. Further, this paragraph provided that Smith's responsibilities for developing sales extended to "Company's product *includ[ing] but not limited to* fashion bedding collection for JLA home fabric division" product. [Id.]. By its very terms, the Agreement contemplated Smith developing and generating sales of all types of E&E product, not just the sales of JLA Home Fabric product. Accordingly, a reasonable jury reading the contract as a whole could interpret the "sales" benchmark referenced in subparagraph 4(a)(2) as encompassing all sales of *E&E*'s products, including not only sales of JLA Home Fabric product but also the sale of inventory acquired by E&E from IHF.[3]

Additionally, the Agreement contemplated Smith generating sales of "Company's product includ[ing] but not limited to … all type of electric blanket[s]…." [Executive Employment Agreement, Doc. 1-1 at 8 ¶ 2.1].

---

[3] This interpretation is also supported by the testimony of both Jin and Kerr, who testified that "Company's products" meant the products E&E was selling, regardless of which business entity actually owned the product. [Transcript May 14, 2013, Doc. 51 at 184-85, 267].

E&E argues that this paragraph was intended to reference only electric blankets sold by JLA Home Fabric. However, there was substantial evidence at trial that showed that JLA Home Fabric never sold or even developed any electric blanket product at any time from 2008 through the time of trial in 2013. [Transcript May 13, 2013, Doc. 49 at 34; Transcript May 14, 2013, Doc. 51 at 185-87, 267-68]. Indeed, before execution of the Executive Employment Agreement in June 2008, E&E had never sold any electric blanket product. [Transcript May 13, 2013, Doc. 49 at 34; Transcript May 14, 2013, Doc. 51 at 268]. Accordingly, the *only* electric blankets E&E had plans to sell, at the time of the Agreement's execution or at any time from June 2008 through May 2009 (the first "contract year" following execution of the Agreement), were electric blankets from the IHF inventory and E&E electric blankets (the former IHF product) sold on IHF contracts and accounts. [Transcript May 13, 2013, Doc. 49 at 34-35; Transcript May 14, 2013, Doc. 51 at 268]. Therefore, under the Agreement's language and the parties' situation at that time, the parties plainly intended for Smith's responsibilities and sales benchmarks to include the sale of electric blankets from the IHF inventory and E&E electric blankets sold on IHF contracts and accounts.

That the parties contemplated Smith selling IHF product on E&E's behalf is also supported by the requirement in the Agreement that E&E pay Smith "additional compensation" if his efforts generated sales of E&E product on IHF contracts and accounts exceeding certain levels. In connection with the Asset Sale Agreement, E&E agreed to pay IHF's Bankruptcy Estate commissions on the sale of E&E product on IHF contracts and accounts during the first blanket season thereafter. [See Asset Sale Agreement, Doc. 4-1]. The parties contemplated these commissions providing payment to IHF's secured and unsecured creditors. [Executive Employment Agreement, Doc. 1-1 at 9 ¶ 3.2(c)]. There was a limit, however, as to the amount of commissions E&E had to pay for such sales. Subparagraph 3.2(c) of the Agreement required E&E to pay Smith "additional compensation" in the event E&E had sufficient sales on IHF contracts and accounts that the resulting commissions met that limit. [Transcript May 14, 2013, Doc. 51 at 272-75]. At trial, Jin admitted that in the employment context, "compensation" meant pay in exchange for services. [Id. at 272]. Thus, based on the evidence presented, a reasonable jury could conclude that subparagraph 3.2(c) contemplated E&E paying Smith "compensation" for his services in generating sales of E&E product on IHF contracts.

For the foregoing reasons, the Court concludes that there was substantial evidence presented to support the jury's finding that Smith was not terminated "for cause shown" within the meaning of the parties' Agreement, and that he was therefore entitled to a severance payment of $150,000.

### B. Admission of William Clarke's Testimony

Alternatively, E&E requests a new trial pursuant to Rule 59(e) due to the improper admission of the testimony William Clarke, the attorney who served as the trustee for the IHF bankruptcy proceeding. E&E contends that Clarke's testimony was irrelevant to the issue before the Court, namely, the employment contract between Smith and E&E. E&E further argues that Clarke's testimony was highly prejudicial, as he was "called for the simple purpose of casting a dark shadow on E&E without offering any relevant testimony." [Doc. 52-1 at 24].

Rule 59(a) of the Federal Rules of Civil Procedure provides that the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The admission of irrelevant and prejudicial evidence which results in substantial harm to the losing party can be the basis for a Rule

59(a) motion. See 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Practice and Procedure § 2805 (2012).

At trial, E&E objected to the Court allowing Clarke to testify at all, on the grounds that Clarke had no relevant testimony to offer. [Transcript May 14, 2013, Doc. 51 at 13-17]. The Court overruled E&E's objection, noting that "there are at least some things that Mr. Clarke can testify to that provide context concerning the evidence . . . [of] IHF inventory, the amounts of those sales, the commissions on those sales, a number of those sorts of issues." [Id. at 16]. Clarke went on to testify, with no objections made as to any of the specific questions asked or answers provided and with only one objection as to admission of an exhibit. [Transcript May 14, 2013, Doc. 51 at 18-52].

Having reviewed Clarke's testimony, the Court finds that such testimony was relevant to proving the scope of E&E's sales of IHF inventory during Smith's employment, the economic benefit to E&E from such sales, the scope and nature of the sales that Smith was responsible for generating, the volume of the sales of IHF inventory generated by Smith, the volume of the sales that Smith generated for E&E products sold on IHF contracts and accounts, and the fact that such sales greatly exceeded the sales benchmark under subparagraph 4(a)(2) of the

Agreement. Further, Clarke's testimony assisted the jury in understanding the situation of the parties at the time of the Agreement and the intent of the "compensation" and sales referenced in subparagraph 3.2(c). Nothing in Clarke's testimony was so prejudicial to the Defendant as to warrant a new trial in this matter. The Defendant's alternative request for a new trial, therefore, is denied.

# **O R D E R**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial [Doc. 52] is **DENIED**.

**IT IS SO ORDERED.**

Signed: March 20, 2014

Martin Reidinger
United States District Judge